IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| BARBARA JOYCE SHELBY,<br><br>　　　　　Plaintiff,<br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | No. 9:21-CV-00038-TH |

**REPORT AND RECOMMENDATION**

The claimant, Barbara Joyce Shelby, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The District Court referred the case to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference. For the reasons explained below, the undersigned recommends affirming the Administrative Law Judge's ("ALJ") decision.

**I. FACTUAL AND PROCEDURAL HISTORY**

Shelby filed a claim for disability insurance benefits (DIB) on March 1, 2018, alleging she became disabled on April 30, 2017. (Tr. 17.) On her alleged date of disability onset, she was "closely approaching advanced age" (age 50-54), however shortly thereafter she changed age categories to "advanced age" (age 55+). (Tr. 55.) She has a high school education and past work as a salesclerk, machine assembler, and in the composite job of dispatcher and corrections officer. (Tr. 19.) Her work history shows nearly 38 years of covered earnings prior to her alleged disability onset. (Tr. 281-82.)

Shelby's claim was denied initially and upon reconsideration, therefore she requested an administrative hearing that was held before ALJ William B. Howard on September 20, 2019. (*Id.*) ALJ Howard issued his decision denying her claim on October 21, 2019. (Tr. 17-27.)

In reaching his decision, ALJ Howard utilized the five-step sequential analysis model specified by regulations and approved by courts.[1] At step one, ALJ Howard found that Shelby has not engaged in substantial gainful activity since April 30, 2017. (Tr. 19.) At step 2, he found that Shelby has "severe impairments" of disorder of the spine, disorder of the shoulder, and obesity. (Tr. 20.) ALJ Howard then formulated the residual functional capacity (RFC), finding that Shelby has the RFC to perform light work, but can only occasionally stoop, kneel, crouch, and climb stairs and ramps; never climb ladders, ropes or scaffolds; and never reach overhead with the dominant upper extremity.[2] (Tr. 21.) In relying on vocational expert testimony, ALJ Howard found that Shelby could perform her past relevant work as a salesclerk and denied benefits at step 4. (Tr. 26.) The Appeals Council denied Shelby's request for review on January 26, 2021. (Tr. 1-3.) Having exhausted administrative remedies, Shelby seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. JUDICIAL REVIEW

This court reviews the Commissioner's denial of social security disability benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Keel v. Saul*, 986

---

[1] To determine whether a claimant is disabled, the Commissioner's analysis proceeds along five steps. *See* 20 C.F.R. § 404.1520(a)(4); *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021). The Commissioner considers (1) whether the claimant is engaged in "substantial gainful activity," (2) the severity and duration of the claimant's impairments, (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations, (4) whether the claimant can still do his "past relevant work," and (5) whether the impairment prevents the claimant from doing any relevant work. *Id*.

[2] Light work is defined as work requiring a great deal of standing/walking during the workday, or about 6 hours, while lifting up to 20 pounds occasionally and 10 pounds frequently. 20 C.F.R. § 404.1567(b); S.S.R. 83-10 (1983).

F.3d 551, 555 (5th Cir. 2021) (quotation marks and citation omitted). Substantial evidence is merely enough that a reasonable mind could arrive at the same decision; though the evidence "must be more than a scintilla[,] it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quotation marks and citation omitted).

Reviewing courts, therefore, give the Commissioner's decisions great deference. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Courts may not re-weigh evidence, try issues *de novo*, or substitute their judgments for those of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance. *Elfer v. Texas Workforce Commission*, 169 F. App'x 378, 380 (5th Cir. 2006); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not "substitute [its] judgment for that of the Secretary"). Rather, it is for the Commissioner to weigh evidence and resolve conflicts. *See Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

### III. POINTS OF ERROR AND RESPONSE

Shelby raises two points of error on appeal. First, she claims that ALJ Howard failed to properly evaluate the medical opinion evidence consistent with Agency authority and Fifth Circuit precedent. Second, she claims that ALJ Howard's credibility assessment of Shelby is defective because of the above point of error, and also because of his failure to consider Shelby's "stellar work history" in his assessment of her credibility. The Commissioner responds that contrary to Shelby's allegations, ALJ Howard properly addressed the medical opinion evidence in accord with the new, relevant regulations and that substantial evidence supports his decision. She further contends that even if ALJ Howard did commit error in formulating RFC, it was harmless because the job identified at step four (salesclerk) relied on her description of how that

3

work was actually performed. Moreover, the Commissioner claims that the ALJ's credibility determination is supported by legitimate reasons, including an assessment of her daily activities, conservative medical treatment, and mild objective treatment, that conflict with her subjective complaints, poor effort on testing, and lack of referral for surgery/pain management.

## IV. RELEVANT MEDICAL EVIDENCE

Shelby's medical record is extensive, and a comprehensive recitation of all the medical evidence is not warranted to evaluate the merits of her appeal.[3] To summarize, Shelby suffered an on-the-job injury (lumbar sprain) in April 2017 while working as a corrections officer. (Tr. 22.) She initially sought treatment from Michael Iverson, M.D., at Urgent Health Solutions, P.A. (Tr. 415-87.) Dr. Iverson cleared Shelby to return to work on May 2, 2017, with the restriction that she not lift or carry objects more than 5 pounds. (Tr. 417.) Shelby followed up with Urgent Care Solutions on a near-weekly basis, and on May 9, 2017, PA Robert Standerford advised that she could "work with light duty," but limited to lifting/carrying no more than 10 pounds, and no climbing stairs. (Tr. 419-423.) On May 16, 2017, Dr. Iverson saw Shelby and advised her to "work with light duty restrictions" and limited her to no more than 5 pounds of lifting/carrying and no kneeling, bending or pushing/pulling. (Tr. 426, 427.) He also referred her to physical therapy, which she started on May 23, 2017. (Tr. 530.) Shelby's weekly workers' compensation status reports from Urgent Health Solutions limited her ability to lift/carry objects not more than 5 pounds until June 9, 2017, when PA Standerford noted that her ability to lift/carry increased to 10 pounds. (Tr. 435.) The 10 pound lifting/carrying limitation was noted on almost every weekly status report issued from June 9, 2017, until August 10, 2018. (*See* Tr. 423, 435, 440,

---

[3] Shelby's appeal is limited to her ability to comply with the lift/carry demands of light work (10 pounds frequently), to reach in all directions on the right, and to sit/stand for 8 hours per day.

444, 448, 452, 456, 459, 469, 473, 477, 481, 484, 592, 597, 598, 601, 606, 616; and *see* Tr. 427 and 431).[4]

In March 2018, Shelby underwent a maximum medical improvement evaluation from Larry Isbell, D.C., who assessed a five percent impairment rating and concluded that she was released to work with "light duty restrictions" due to back pain and "slightly restricted" range of motion. (Tr. 619.) A report from Urgent Health Solutions dated August 24, 2018, cleared Shelby to work with no restrictions. (Tr. 668-669) (stating that exam shows resolution of injury and Shelby is able to resume regular work duties without restrictions).

Nearly two months after she was cleared by Dr. Iverson to return to work without restrictions, Shelby presented to Kay Nelson, M.D., on October 15, 2018. One day later, on October 16, 2018, Dr. Nelson completed a medical source statement noting drastic restrictions on Shelby's ability to work. (Tr. 757, 841, 951-54.) Based on low back pain, right shoulder pain, right hip pain, and hypertension, Dr. Nelson assessed the following limitations: Shelby can only sit for 4 hours and stand/walk for less than 1 hour in an 8 hour workday, needs the option to sit/stand at will and to lie down twice a day, and needs a walker when ambulating more than a few feet. (Tr. 952-53.) Dr. Nelson opined that Shelby can occasionally reach overhead and in other directions bilaterally, and can occasionally use foot controls, can never perform postural activities, and will likely be off task more than 25% of the workday and miss more than 4 days of work per month due to her impairments and/or treatment. (Tr. 951-954.) Most important to Shelby's appeal, Dr. Nelson indicated that she can never lift or carry items of any weight—even less than 10 pounds. (Tr. 952.)

---

[4] Shelby's lift/carry limitation was raised to 20 pounds by PA Standerford on February 16, 2018, but the undersigned notes this was an isolated limitation until August 2018, when she was cleared to work without restrictions. (Tr. 487.)

Dr. Nelson also completed forms entitled "Attending Physician's Statement of Work Capacity and Impairment; Musculoskeletal Neck and Back." (Tr. 895-897, dated November 1, 2018); (Tr. 936, dated October 29, 2018). The October 29th form notes chronic right hip pain and right shoulder pain, but normal motor strength. (Tr. 934.) At that time, Dr. Nelson stated that she was unable to provide a work release. (*Id.*) Interestingly, several days later on November 1, Dr. Nelson reversed her opinion and released Shelby to "work full time with no restrictions." (Tr. 897.) In a letter dated December 4, 2018, Dr. Nelson changes course again and reported that Shelby "needs to be off work until February 2019 due to illness." (Tr. 757.) In a form dated January 25, 2019, Dr. Nelson indicates that Shelby is likely to miss more than 4 days per month of work, can *never* lift or carry items of any weight with either extremity, and can stand/walk less than one hour and only sit for four hours per workday. (Tr. 698-700.)

Shelby was treated by Toni White, M.D., who also practices at Lufkin Medical Clinic. Dr. White completed a medical source statement on January 24, 2019, that was noticeably less restrictive than noted by Dr. Nelson only one day later. (Tr. 693-96) (basing her opinion on MRI results showing chronic tendonitis/tendinosis, but no visible tear, and atrophy or retraction as well as mild disc distention of the subacromial subdeltoid bursa.) Dr. White attributed no limitations to Shelby's left extremities but concluded that she could never reach overhead and only rarely reach "in all directions" with her right. (Tr. 696.) Unlike Dr. Nelson, Dr. White found no limitations in Shelby's ability to sit, stand, or walk. (Tr. 694.)

In June 2019, Shelby was examined by Kevin Murphy, P.A., at the Lufkin Medical Clinic, and reported ongoing right shoulder pain that was worsening and that she was undergoing physical therapy. (Tr. 1126-29.) PA Murphy limited Shelby to sedentary work and maximum lifting of 5 pounds without assistance. (*Id.*) He also noted that she did not cooperate with

6

strength testing due to moderate pain, and that shoulder range of motion exam revealed decreased effort. (Tr. 1127.)

State agency medical consultants (SAMCs) Drs. Reddy and Rowley reviewed the medical evidence and concluded that Shelby could perform medium work with occasional postural activities.[5]

## V. DISCUSSION

Shelby generally argues that the medical opinion evidence establishes "far greater limitations than the ALJ found." (Doc. No. 20, p. 7.) First, she contends that Dr. Nelson's opinion that she be limited to less than 8 hours of sitting/standing/walking in a workday is contrary to the Agency's definition of the ability to work as a full-time, sustained activity (relying on S.S.R. 96-8p, which defines the ability to work as the ability to do so "8 hours a day, for 5 days a week . . . on a regular and continuous basis"). Second, Shelby maintains that because "every treating and examining physician limited [her] to lifting/carrying 10 pounds (or less), which is most consistent with the lifting/carrying requirements of sedentary work," she is not capable of performing light work as found by ALJ Howard. (Doc. No. 20, p. 8.) Third, because Drs. Nelson and White both limited Shelby to only *occasional* reaching, her ability to perform the salesclerk job is precluded, and if she cannot perform the job (even with the light RFC attributed by the ALJ), she is disabled as of her 55th birthday if she has no transferable skills. (*Id*.) Although not entirely clear, it appears that Shelby attacks both the sufficiency of ALJ Howard's explanation for discounting Drs. Nelson and White's medical opinions pursuant to § 404.1520c(b) *and* the evidentiary support for his RFC finding. The undersigned finds that the most efficient way to tackle these issues is to first examine whether ALJ Howard's

---

[5] ALJ Howard correctly noted that their review of the medical record did not include more recent evidence of Shelby's overhead reaching limitations.

explanation for the persuasiveness attributed to Dr. Nelson's standing, walking, sitting, carrying, lifting, and reaching limitations is sufficient pursuant to § 404.1520c.[6]  In the following section, the undersigned will explain that Shelby's past relevant work as actually performed did not require greater lifting/carrying abilities than supported by the record.  And last, the undersigned will explore her challenge to ALJ Howard's credibility finding.

      A.      <u>Does ALJ Howard's explanation satisfy § 404.1520c?</u>

Pursuant to the revised rules for evaluating medical opinions, the ALJ must determine the persuasiveness of a physician's medical opinion. 20 C.F.R. § 404.1520c(b). When evaluating whether a medical opinion is persuasive, the ALJ considers five factors: 1) supportability; 2) consistency; 3) the relationship with the claimant; 4) specialization; and 5) other factors which "tend to support or contradict the opinion." *Id*. § 404.1520c(c).  When addressing the sufficiency of an ALJ's persuasiveness discussion under § 404.1520c(b)(2), one court described the ALJ's obligation as follows:

> An ALJ's persuasiveness discussion is critical to his analysis and . . . must provide the Court with an 'adequate discussion' of his reasons for finding a particular medical opinion to be persuasive or unpersuasive. The measuring stick for an 'adequate discussion' is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof. Stated differently, there must be a discernible 'logic bridge' between the evidence and the ALJ's persuasiveness finding.

*Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 500 (S.D. Miss. 2021) (citing *Pearson v. Comm'r*, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021); *Kilby v. Kijakazi*, No. 4:20-CV-03035, 2022 WL 1797043, at *4 (S.D. Tex. Mar. 15, 2022).  The most important factors in this analysis are supportability and consistency.  *See id*.; 20 C.F.R. § 404.1520c(b)(2) (The ALJ must

---

[6] Both parties agree that this case was filed on or after March 27, 2017, and therefore, new regulations govern how the ALJ evaluates medical opinions.

8

"explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior medical findings in [his] determination or decision.").

"Supportability" focuses on how well the medical evidence and supporting explanations given by the medical provider support the provider's opinion. *See* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."); *see also, Vellone v. Saul*, 1:20-cv-00261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) ("[T]he strength of a medical opinion increases as the relevance of the objective evidence and explanations presented by the medical source increase." (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency," on the other hand, is "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." (*Id*.)

Here, ALJ Howard thoroughly summarized Drs. Nelson and White's treatment of Shelby:

In November 2018, the claimant presented to Kay Nelson, M.D., complaining of pain in the right shoulder, low back, and right hip. Her x-rays were negative, but her physical examination noted moderate tenderness on palpation of the mid lower back on to the right. It also found tender posterior aspect right shoulder with decreased range of motion as well as pain with straight leg rise testing on the right side. The claimant's symptoms persisted and she underwent an MRI of the right shoulder in January 2019, which noted a type 2 acromion unsloping anteriorly with moderate joint arthrosis. There was also possible calcific peritendinitis – entire critical zone appears thickened with some increased signal consistent with chronic tendonitis/tendinosis, but no visible tear, atrophy or retraction as well as mild disc distention of the subacromial subdeltoid bursa.

The claimant had a follow up appointment with Toni White, M.D., at the end of January 2019. Her physical examination noted that she had a limited straight leg raise while supine to 5 degrees. She had limited range of motion of the right shoulder to 90 degrees abduction with pain, limited anterior flexion to 60 degrees with pain, and limited internal rotation to gluteal muscle. She also had tenderness to palpation over the anterior aspect of the shoulder. The claimant began crying during the Neers test – she did not elaborate as to why she was crying – and the

9

> examination was stopped. In March 2018, Dr. White limited her to sedentary work without maximum lift of 10 pounds without assistance.
>
> In June 2019, the claimant returned for follow up with Dr. White. She reported ongoing pain of the back, shoulder and hip. She indicated that she was undergoing physical therapy of the right shoulder and would then do physical therapy for her back. She stated that she felt like her right shoulder symptoms were getting worse. She had a hard time gripping things and her hands would cramp up on her at times. She had not yet seen pain management. On examination, she was found to have limited flexion at 70 degrees of the lumbar spine. However, it was noted that the claimant would not cooperate with the exam and that her complaints of pain limited almost all movement. The exam of both upper extremities were limited due to her pain complaints and she could not adequately exert.

(Tr. 22-23) (internal citations omitted). In addressing the persuasiveness attributed to Dr. Nelson's medical opinions, ALJ Howard explained:

> After careful consideration of the record, the undersigned finds that Dr. Nelson's opinions are not fully consistent with her own treatment notes or with the record as a whole. Specifically, the undersigned found no complaints or objective evidence to support the total restriction on all postural activities, a need to elevate legs, or bilateral restrictions on the upper extremities. Furthermore, there are no complaints or objective findings to support the mental restrictions detailed in both opinions. There are no reports of difficulties with concentration, memory, or an unusual psychiatric presentation that warranted treatment. Nor are these limitations reflected in the claimant's allegations. Given the significant discrepancy between the record and these opinions, the undersigned finds them to be unpersuasive.[7]

(Tr. 25.) ALJ Howard summarized the persuasiveness attributed to Dr. White's January 2019 assessment:

> The undersigned finds that Dr. White's opinion that the claimant would miss work four days per month is not supported by the course of treatment reflected in Dr. White's treatment notes. While her objective findings are generally consistent with her other conclusions in this opinion, the undersigned notes that there is no evidence of this impairment until the end of 2018, meaning this was a new impairment and treatment had just begun. As such, the undersigned finds that this opinion is not reflective of the claimant's general level of functioning during the

---

[7] Shelby is not challenging ALJ Howard's decision to not incorporate mental limitations. However, ALJ Howard's reference here is relevant. There is no consistent evidentiary support—subjective or objective—for Dr. Nelson's findings that Shelby be limited in her mental abilities. In noting this discrepancy, ALJ Howard remarked on the supportability and consistency of Dr. Nelson's findings in their entirety.

10

> period at issue nor is it indicative of what her functioning will be with treatment. This is underscored by the claimant's course of treatment and Dr. White's less restrictive opinion discussed below. As such, the undersigned finds it to be unpersuasive.

(Tr. 25.) And in assessing Dr. White's later report from March 2019, he explained:

> The undersigned considered the March 2019 statement of Dr. White, limiting the claimant to sedentary work with a maximum lift of 10 pounds without assistance. The undersigned finds this opinion to be generally consistent with Dr. White's treatment notes, but notes that this opinion is less restrictive than Dr. White's January 2019 assessment, indicating improvement. Given the recent onset and subsequent improvement of the claimant's shoulder condition, the undersigned finds that this assessment is not reflective of the claimant's functioning during the entire period at issue and, thus, unpersuasive.

(Tr. 25-26.)

The Fifth Circuit has stated that an "ALJ does not need to comment on every piece of evidence, but only must build an accurate and logical bridge between the evidence and the final determination. *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010) (citing *Glomski v. Massanari*, 172 F. Supp. 2d 1079, 1082 (E.D. Wis. 2001)). This is not a case where the ALJ failed to provide *any* reference to the record that demonstrated a lack of consistency between the opinions and the record taken as a whole—the cited text from ALJ Howard's decision clearly proves otherwise. *See, e.g., Clay v. Kijakazi*, No. 4:21CV149-SA-DAS, 2022 WL 13989015, at *4 (N.D. Miss. Oct. 21, 2022) (remanding appeal where the ALJ provided only two sentences to explain the rejection of a medical provider's opinion); *Cooley*, 587 F. Supp. 3d at 500 (remanding for inadequate explanation where the ALJ's only specific discussion of medical opinion was his brief statement that "treatment records" showed "generally unremarkable findings on physical exams.") Rather, this is a case where the plaintiff is challenging the *adequacy* of the ALJ's decision.

A medical opinion is "unsupported" if it is not corroborated by the doctor's own treatment notes and objective test results.[8]  A reading of the decision shows that ALJ Howard importantly noted that Shelby's objective testing during examinations in January 2019, June 2019, and September 2019 (with Dr. White and Kevin Murphy, PA-C) was inconclusive.  In January 2019, Shelby began crying during the Neers test, but the treatment notes do not elaborate as to why she was crying, and the examination stopped.  (Tr. 23.)  In June 2019, she complained that pain limited almost all movement and did not cooperate with the exam.  (Tr. 23.)  In September 2019, Shelby exhibited positive Waddell signs, which are indicative of symptom magnification.  (Tr. 26.)  He also noted that Dr. Nelson did not rely on subjective complaints or objective testing to conclude that Shelby exhibits total restriction on all postural activities, a need to elevate legs, or bilateral restrictions on the upper extremities.  Essentially, ALJ Howard concluded that Drs. Nelson and White's opinions are unfounded by their own exam findings and testing.  He explained this finding in his decision.  Therefore, the undersigned finds that ALJ Howard properly compared the medical opinion evidence to the records from the same treating providers, and his discussion of the "supportability" factor is sufficient under § 404.1520c.

An opinion is "inconsistent" if it is not supported by the entirety of the medical record, and the undersigned's review extends beyond just the part of the decision directly discussing a specific opinion.  *See Clay*, 2022 WL 13989015, at *6 ("Other parts of a decision may well add to the explanation.")  Throughout his decision, ALJ Howard explicitly identified, cited to, and relied on largely consistent records that contradict significant reaching limitations (in all directions, on both sides).  He correctly noted that Shelby was cleared to work with light

---

[8] An opinion is unsupported if the physician "did not provide a detailed explanation for [the] opinion" or if "the physician's own treatment notes do not support the physician's opinion." *Starman v. Kijakazi*, No. 2:20-cv-00035-SRC, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021) (applying 20 C.F.R. § 416.920c); *Hubbard v. Comm'r of Soc. Sec.*, No. 4:20-CV-00588-BP, 2022 WL 196297, at *4 (N.D. Tex. Jan. 21, 2022).

12

restrictions in February 2018, and completely released without restriction in August 2018. (Tr. 22.) He also mentioned that Shelby's alleged reaching limitation did not present until November 2018, and correctly noted she was improving with treatment while ultimately finding that Dr. White's reaching limitations are not reflective of the entire period at issue and thus, unpersuasive.

ALJ Howard's decision clearly shows a consideration of the record as a whole, including a thorough summary of all relevant medical evidence, an adequate reason for discounting it, and a conclusion that the evidence did not support her findings.[9] Consequently, the undersigned finds that ALJ Howard's discussion of the medical opinion evidence enables a court to take a "meaningful review" as to whether it is supported by substantial evidence. *Cf. Pearson*, 2021 WL 3708047, at *5; *Miller v. Comm'r of Soc. Sec.*, No. 1:20-CV-194-HSO-RPM, 2021 WL 7541415, at *9 (S.D. Miss. Dec. 17, 2021), report and recommendation adopted, No. 120CV00194HSORPM, 2022 WL 566175 (S.D. Miss. Feb. 24, 2022). Shelby contends that Dr. Nelson's opinion is *not* inconsistent with her notes or the record as a whole and that ALJ Howard's assessment of her opinion is his lay interpretation of the underlying medical data to reject the opinion of a treating source. (Doc. No. 20, p. 22.) However, this argument is not persuasive because it invites the undersigned to reweigh the evidence, which it cannot do, even where there is evidence that weighs against the Commissioner's decision. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). It is the well-established role of the ALJ to "properly interpret[ ] the medical evidence to determine [plaintiff's] capacity for work," which is precisely what ALJ Howard did in this case. *Taylor*, 706 F.3d at 603. Accordingly, Shelby's

---

[9] Notably, Dr. Nelson's treatment notes do not indicate any restricted range of motion on Shelby's left upper extremity or that she gave an instruction that Shelby needs to elevate legs or restrict postural activity. (Tr. 813, 820-862, 834.)

13

claim that ALJ Howard's decision inadequately explains the weight attributed to medical opinion evidence fails.[10]

B.  Is ALJ Howard's decision supported by substantial evidence?

Shelby also argues that the RFC assessed by ALJ Howard was not supported by substantial evidence because the treating medical opinion evidence demonstrates more restrictive limitations (in the areas of "sitting, walking and standing," "lifting," and "reaching in all directions") than ALJ Howard ultimately found.  This argument also fails.  As noted above and demonstrated in his decision, ALJ Howard examined the extensive medical record, including near-weekly assessments from her workers' compensation physician, Dr. Iverson, and medical records from treating providers Drs. Nelson and White (including objective testing results) to make his RFC determination.  He concluded that the record did not contain consistent reports or objective evidence of problems with sitting or standing.  The undersigned agrees.  Neither Dr. Iverson, Dr. Isbell, the SAMCs, nor Dr. White attributed chronic sitting, standing, or walking limitations that would restrict Shelby from working an 8 hour workday.[11]  Shelby was cleared to light duty work in February 2018, and on April 20, 2018 (less than a year after her injury), she was assessed only a 5% permanent impairment rating  (Tr. 619-621, 622.)  Even Dr. Nelson agreed that Shelby could "work full time with no restrictions" in November 2018.  (Tr. 897.)

In regard to reaching, lifting and/or carrying limitations, Shelby argues that every exam since October 2018 shows reduced range of motion in her right shoulder.  However, ALJ

---

[10]  Shelby also asserts that no physician reviewed Dr. Nelson's progress notes and opinion that they were inconsistent with her medical opinion.  However, as discussed *supra,* it is the ALJ's role to weigh the medical evidence and therefore, this argument also fails.

[11]  Shelby's medical providers at Urgent Care Solutions consistently noted no restrictions in sitting or standing, with few exceptions.  (Tr. 469, 473, 477, 484, 487, 504, 508, 512, 519, 525, 539) (all noting no restrictions in standing or sitting); *but see* (Tr. 549) (limited to 4 hours standing and 8 hours sitting on August 31, 2017); (Tr. 465) (4 hours standing and 6 hours sitting on December 7, 2017) (Tr. 465); and (Tr. 481) (standing limited to 4 hours on January 25, 2018).  Dr. White noted no restrictions in sitting/standing in January 2019.  (Tr. 694.)

Howard noted that Shelby "was found to give poor effort and that these symptoms were out of proportion with the objective imaging and course of treatment which consisted of physical therapy and medication without consultation of a pain management specialist." (*Id.*) In evaluating Kevin Murphy, PA-C's, September 2019 assessment, ALJ Howard correctly recognizes that Shelby exhibited positive Waddell signs, "which are indicative of symptom magnification." (Tr. 26.) An ALJ properly finds that incomplete effort, inconsistent performance, and exaggerated responses weigh against the validity of a claimant's subjective symptom complaints. *See White v. Astrue*, A. No. 4:08–CV–415, 2009 WL 763064, at *12 (N.D. Tex. Mar. 23, 2009) (citing *Rodriguez v. Barnhart*, No. SA–04–CA–0212, 2005 WL 492857, *4 (W.D. Tex. Feb. 25, 2005) (finding that ALJ committed no error in interpreting claimant's Waddell's signs as malingering given the medical reports of multiple positive signs and poor effort on testing)). Based on the evidence, ALJ Howard incorporated physical restrictions limiting Shelby to no overhead reaching on the right but did not incorporate Dr. Nelson's opinion that she is completely restricted from reaching in all directions with both extremities.

Substantial evidence under the Social Security Act "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. A reasonable mind could easily conclude that Shelby's poor effort on testing and subjective reports of symptoms are not supported by objective imaging. Moreover, her conservative (nonsurgical) treatment and lack of consistent objective medical evidence to support Dr. Nelson's severe sitting and standing limitations lend support to ALJ Howard's determination regarding her ability to sit and stand. A finding of no substantial evidence will be made only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (per curiam) (citation and internal quotes omitted); *Brewster v. Kijakazi*, No. EP-20-CV-00314-ATB, 2021 WL 4126006, at *1 (W.D. Tex. Sept. 8, 2021). That is not the case here, where the record contains clearly conflicting medical evidence. Accordingly, the undersigned finds that the medical evidence relied on and addressed by ALJ Howard constitutes substantial evidence to support the RFC finding.

      C.      <u>Shelby's past relevant work as actually performed</u>

ALJ Howard's determination that Shelby was capable of performing light work includes an implicit finding that she is capable of lifting 20 pounds occasionally and 10 pounds frequently. § 404.1567(b); S.S.R. 83-10 (1983). Shelby argues that *all* of her treating and examining physicians imposed limitations that are consistent with the requirements of sedentary work (which involves lifting no more than 10 pounds at a time), and therefore, ALJ Howard's RFC finding is not supported by substantial evidence. As an initial matter, the undersigned recognizes that Shelby's lifting restriction was noted to be no more than 20 pounds on February 6, 2018 (Tr. 487), and that she was cleared to work *without* physical restrictions on August 24, 2018, by Jennifer Harris, FNP-C, at Urgent Health Solutions (Tr. 669), and by Dr. Nelson on November 1, 2018. (Tr. 897.) Moreover, Dr. Isbell did not include lifting or carrying restrictions on his maximum medical improvement rating form. (Tr. 619.) So, her contention that *every* doctor has attributed lifting/carrying restrictions to under 10 pounds is false.[12]

Notwithstanding, in determining whether Shelby could perform his former work as salesclerk, the ALJ was required to assess the physical demands of the job *as actually*

---

[12] To the extent that Shelby also contends the lifting component of her RFC is not supported by substantial evidence, the undersigned disagrees. Shelby was cleared to work without lifting/carrying limitations in fall 2018. (Tr. 619, 669.) Her complaints related to lifting/carrying did not arise until November 2018. Therefore, ALJ Howard relied on substantial evidence to conclude that her shoulder pain was a new injury and not indicative of what her functioning was during the relevant period or will be with treatment.

*performed*.[13] *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). This determination may rest on descriptions of past work as actually performed or as generally performed in the national economy. *See Jones v. Bowen*, 829 F.2d 524, 527 n. 2 (5th Cir.1987). "To assess the exertional and non-exertional demands of a claimant's past relevant work as actually performed, the ALJ may rely upon two sources of information: a properly completed Form SSA-3369 (Work History Report) and the claimant's own testimony." *Borrego v. Astrue*, 825 F. Supp. 2d 779, 790 (W.D. Tex. 2011).

At the administrative hearing, ALJ Howard asked Shelby about the physical demands of her past work as a salesclerk:

> Q: What did you have to lift in that job [as salesclerk], how much weight?
>
> A: I didn't have to do any lifting on that job. . . I just ran the computer and did administrative work.

(Tr. 48.) Shelby's self-completed work history form corroborates her verbal response—she noted that her work as a salesclerk from 2002-2005 required that the heaviest weight lifted was less than 10 pounds, and that she never handled, grabbed, or grasped big objects. (Tr. 321.) She further clarified in her own writing on the work history form: "Not a lot of lifting and carrying things. Was mostly at the register and waiting on customers, checking them out on the register." (*Id.*) So, even assuming *arguendo* that ALJ Howard erred in finding that Shelby can perform the lifting/carrying demands for light work, her job of salesclerk—as actually performed by her own admission—does not require the ability to lift/carry objects more than 10 pounds.

---

[13] Alternatively, the ALJ may consider past relevant work as it is *generally performed* in the national economy. Social Security Ruling: Program Policy Statement Titles II and XVI: Past Relevant Work-The Particular Job or the Occupation as Generally Performed, SSR 82-61, 1982 WL 31387, at *1-2 (S.S.A. Nov. 30, 1981*); Cooley v. Soc. Sec. Admin.*, Civ. Act. No. 21-840, 2022 WL 1043693, at *3 (E.D. La. Feb. 4, 2022) (citations omitted).

17

It is the plaintiff's burden at step four to establish she cannot perform her past relevant work. *See Leggett*, 67 F.3d at 564. Here, ALJ Howard made his determination on the basis of Shelby's testimony and documents she signed in support of her application (that were left unchallenged by counsel in the briefing and at the hearing). In the absence of record evidence indicating that Shelby's actual job duties required more than the limited RFC for light work (as defined by ALJ Howard), the undersigned finds that the step four finding is supported by substantial evidence.

### D.     ALJ Howard's Credibility Determination

Finally, Shelby contends that ALJ Howard's credibility assessment is defective because he was required to consider her "stellar work history," which he did not do. In making a credibility determination, the ALJ must consider the objective medical evidence, as well as other factors, including: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* S.S.R. 96–7p (1996); *Salgado v. Astrue*, 271 F. App'x 456, 462 (5th Cir. 2008) (discussing factors). ALJ Howard explicitly discussed some of these factors, namely, daily activities, medication, course of treatment, and medical treatment. (Tr. 22-24.)

The evaluation of a claimant's subjective symptoms "is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be

disabled." *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988) (internal quotation omitted). "The ALJ is not required to mechanically follow every guiding regulatory factor in articulating reason for denying claims or weighing credibility." *Clary v. Barnhart*, 214 Fed. App'x 479, 482 (5th Cir. 2007) (emphasis in original). District courts in this Circuit have rejected imposing a bright-line requirement on an ALJ to consider a claimant's strong work history, and the Fifth Circuit has not adopted such a rule. *See, e.g., Martinez v. Saul,* No. SA-20-CV-00869-ESC, 2021 WL 2253912, at *6 (W.D. Tex. June 3, 2021); *Wetzel v. Berryhill*, No. SA-17-CV-00364-RBF, 2018 WL 4664139, at *8 n.7 (W.D. Tex. Sept. 28, 2018) (collecting cases). In denying benefits, ALJ Howard considered the medical evidence under the governing regulations and relied heavily on Shelby's own testimony and description of symptoms in determining that her claimed impairments allowed her to perform work at the light exertional level, with certain modifications, and the undersigned finds that substantial evidence supports ALJ Howard's credibility assessment.

## VI. CONCLUSION

In summary, the undersigned finds that ALJ Howard applied the correct legal standards and that his decision is supported by substantial evidence. Accordingly, the Commissioner's administrative decision should be affirmed.

## VII. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation. Objections to this report must: (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report. *See* 28 U.S.C. § 636(b)(1)(c) (2009); FED. R. CIV. P. 72(b)(2). A party who objects to this report is

entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made. *See* 28 U.S.C. § 636(b)(1) (2009); FED R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, at 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 15th day of December, 2022.

_____
Zack Hawthorn
United States Magistrate Judge